UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **COVENANT HEALTH SYSTEM,**<br><br>                 **Plaintiff,**<br><br>v.<br><br>**GROUP & PENSION ADMINSTRATORS, INC., ET AL.**<br><br>                 **Defendants.** | **Civil Action No. 5:19-cv-00103-H** |

<u>**GPA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**</u>

Defendant, Group & Pension Administrators, Inc. (GPA) replies to the opposition to GPA's motion to dismiss filed by Plaintiff, Covenant Health System (CHS).

**I.      GPA Is Not a Proper Defendant for CHS's ERISA Benefits Claim**

CHS cites authority for the proposition that an entity other than the actual plan administrator may be liable to a for ERISA benefits if that entity exercised actual control over the benefits. GPA agrees these cases correctly state the law when a defendant acts with discretion or pursuant to a delegation of authority from the plan administrator; however, GPA did not do so. GPA provided ministerial duties, not fiduciary duties, and GPA had no authority to act in place of the plan administrator for purposes of determining the benefits due.

CHS appears willing to say whatever it believes is necessary to survive a motion to dismiss—even when its statements and allegations are conflicting, inconsistent, and impossible. First, CHS argues that it alleged GPA failed to reimburse claims (Opposition Brief, at p. 5); however, CHS is well-aware GPA does not fund any benefits payments for these self-funded health plans—the health plans pay the claims themselves with GPA merely handling the ministerial duties of processing the payments determined by the plan administrator from the plan's assets. (Amended Complaint, at ¶¶ 4, 6, 8, 10, 12, 24.) The various allegations that GPA

actually paid the claims is false and contradicted by CHS's admission that the various health plans are all self-funded.

Second, CHS highlights its bizarre allegation that GPA repriced claims pursuant to a Facility Participation Agreement. (Opposition Brief, at p. 6; Amended Complaint, at ¶ 27.) Of course, it is undisputed that the claims at issue were not paid pursuant to a Facility Participation Agreement—there was none in place. More to the point, if the claims had been paid pursuant to a Facility Participation Agreement, there would be no case. The Court simply cannot credit these allegations that are discredited by every single one of CHS's claims.

Third, CHS's actual allegations were against all defendants, including the five groups of plans and employers that were added, but for the benefit of the Opposition Brief, CHS substituted in only GPA's name as if the allegations were made specifically against GPA—they were not and GPA was not responsible for making those benefit determinations.

Fourth, the actual allegations reveal CHS did not actually allege GPA was acting pursuant to any delegation of authority. Instead, CHS alleged GPA was liable "to the extent that GPA was delegated discretion under the healthcare plans," (Amended Complaint, at ¶ 54); however, GPA was not delegated such discretion and CHS did not (and could not) allege otherwise. Accordingly, although an entity other than the plan administrator may be liable for an ERISA claim for benefits if it exercises discretion with respect to benefits or acts pursuant to a delegation of authority from the plan administrator, GPA is not such an entity and CHS did not allege otherwise.

In the Opposition Brief, CHS also attempts to re-characterize its allegations in paragraph 55 of the Amended Complaint. CHS cannot amend its allegations through its brief, and there is no good faith basis on which to plead the health plans contain terms in the summary plan

2

description that conflict with the terms of the plan documents. The Amended Complaint fails to state a claim for ERISA benefits against GPA. If CHS believes it can state such a claim against GPA through an amendment subject to the rules requiring a good faith basis for allegations contained in a pleading, GPA does not oppose CHS's request for leave to amend.

**II.     *Bashara* Is Directly on Point and Precludes CHS's Quantum Meruit / Unjust Enrichment Claim Against GPA**

GPA relies exclusively on *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307 (Tex. 1985), because it is directly on point and dispositive of the issue. In *Bashara*, a personal injury attorney who represented a client for purposes of obtaining a personal injury award asserted a quantum meruit claim against a hospital on the basis that the hospital's lien was satisfied only because of his work on behalf of his client, resulting in unjust enrichment since the hospital did not compensate him. Here, CHS claims GPA was somehow benefitted by CHS's providing health care services to the patients. Putting aside the fatal issue that the Amended Complaint does not identify any benefit to GPA, any benefit CHS might assert would be the type of incidental benefit *Bashara* holds is not recoverable. CHS treated the patients for their benefit—it did not treat them for GPA's benefit. Even if GPA enjoyed some form of incidental benefit that CHS has failed to identify, it would necessarily be an incidental benefit. CHS simply did not treat the patients for the benefit of GPA.

Again, CHS attempts to impermissibly amend its complaint through the Opposition Brief by arguing that GPA was unjustly enriched by health insurance premiums paid to GPA by the patients. As discussed above, CHS knows all the benefit plans at issue are self-funded; accordingly, GPA does not actually pay any health care claims or receive any health insurance premiums from patients. Even if there was some good faith basis to plead GPA received health insurance premiums from patients and was responsible for paying health care claims incurred by the patients, which there is not, CHS could still not state a claim for quantum meruit / unjust enrichment. In that factually erroneous

scenario, the patients—not CHS—would be the ones who arguably enriched GPA and the ones potentially entitled to recovery. This set of facts, even if true, would not give rise to claim by CHS against GPA. CHS failed to state a claim for quantum meruit / unjust enrichment in the Amended Complaint and it failed to point to some other set of facts that would entitle it to relief under quantum meruit or unjust enrichment. Accordingly, the claim should be dismissed and amendment should not be allowed.

### III.     GPA Did Not Violate the ACA's MOOP Requirements

CHS's argument that GPA violated the cost-sharing requirements of the Affordable Care Act (ACA) is dependent on its contention that it is neither a network provider nor a non-network provider. This position is untenable—CHS is either part of a network with the plans or it is not. A provider must be either network or non-network.

CHS alleges that the health plans do not have a network for hospital services. It does not follow that CHS is neither a network provider nor a non-network provider. Rather, CHS is a non-network provider because there is no network between CHS and the health plans. A non-network provider is simply a provider that is not a network provider. CHS erroneously cites 45 C.F.R. § 156.130 in support of its position that it is not a non-network provider. Section 156.130 simply says that if a plan has a network, then cost-sharing amounts for non-network providers do not have to count toward the annual limit on cost-sharing. The health plans comply with this regulation because cost-sharing amounts for non-network providers, like CHS, are counted toward the annual limit. Balance billing amounts from non-network providers, like CHS, do not count toward the cost-sharing limit because "cost-sharing" "does not include balance billing amounts for non-network providers." 42 U.S.C. § 18022(c)(3)(B). The regulation does not aid at all in determining whether CHS is a network or non-network provider; instead, it merely provides that cost-sharing, which excludes balance billing amounts, must count toward the annual limit for non-network plans if there is no network. CHS does not allege GPA failed to count cost-sharing towards the annual limit, but rather it

alleges GPA failed to count balance billing amounts. The statutory text is dispositive on this issue—balance billing amounts do not count toward cost-sharing. *See* 42 U.S.C. § 18022(c)(3)(B).

CHS further reveals its misunderstanding of 45 C.F.R. § 156.130 when it argues the tri-agency guidance requires health plans to have networks. As section 156.130 makes plain, health plans are not required to have networks; however, when they do not have networks, the cost-sharing from non-network providers must be applied to the annual limit on cost-sharing. The fact that such a rule exists, along with the absence of any requirement to the contrary, makes it abundantly clear that health plans are not required to have networks. As CHS observes, the tri-agency guidance lacks the force of law. In any event, the statutory text and regulations are dispositive on this issue. CHS is a non-network provider—because it does not have a network with the health plans—and balance billing amounts from non-network providers do not count toward cost-sharing. Accordingly, GPA could not have violated the cost-sharing limit by failing to count CHS's balance billing amounts toward the patient's cost-sharing limit.

## IV.     The ACA Does Not Impose Cost-Sharing Limit Requirements on Third-Party Administrators

Just as the statutory text clearly resolves the question of whether balance billing amounts from a non-network provider count toward cost-sharing, it resolves the question concerning whether a third party administrator such as GPA has any obligations under federal law related to the cost-sharing limit:

> A group health plan shall ensure that any annual cost-sharing imposed under the plan does not exceed the limitations provided for under paragraph (1) of section 1302(c) [42 U.S.C. § 18022(c)].

42 U.S.C. § 300gg-6(b). Section 300gg-6(b) is the provision CHS seeks to enforce in is ACA claim. As it makes clear a "group health plan"—not a third party administrator—is charged with responsibility for ensuring the cost-sharing limits are observed, only a group health plan has any

obligations under this law. GPA is not a group health plan. CHS cannot seek to enforce a provision of federal law against a part that has no obligations under that federal law.

### V.     CHS's ACA Claim Is Not a Claim for Benefits and CHS Lacks Standing

CHS pled it has obtained an assignment of benefits from each of the patients whose claims are at issue. (Amended Complaint, ¶¶ 52, 59.) While an assignment of benefits permits hospitals to bring suit for benefits due under the plan on behalf of a patient, it does not extend to claims to enforce other provisions of ERISA. ERISA provides that a participant or beneficiary can bring a civil action to "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When a patient assigns his benefits, he is assigning his right to bring claims to enforce his rights to those benefits under § 1132(a)(1)(B). However, § 1132(a)(1)(B) only permits an action to recover benefits due under the terms of the ERISA plan itself. It does not permit an action to enforce violations of ERISA other than the failure to pay benefits due under the plan terms. *See Elite Ctr. for Minimally Invasive Surgery LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 860 (S.D. Tex. 2016). CHS's cause of action is not based on the plan terms, but rather it is based on a provision of the ACA incorporated into ERISA.

CHS cites two California cases involving Salinas Valley Memorial Healthcare System—*Salinas Valley Mem. Healthcare Sys. v. Envirotech Molded Prods.*, No. 17-cv-03887, 2018 U.S. Dist. LEXIS 85256, at *25–27 (N.D. Ca. Nov. 8, 2017) and *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, 5:17-CV-07076-HRL, 2018 WL 2445349, at *12-16 (N.D. Cal. May 31, 2018). Although the cases both arise from a similar pattern of allegations, they are at odds with one another on the ACA cost-sharing limit. Obviously, neither of the unreported California cases is precedential. The *Envirotech* case more closely follows the statutory text, but this Court does

not need foreign persuasive authority to read these statutes—the issue is simple. Cost-sharing does not include balance billing from non-network providers and the statute applies to group health plans, not third party administrators.

## VI. CHS Did Not State a Claim for Breach of Contract

CHS begins by conceding its claim for breach of contract based on the Consents of Admission signed by patients should be dismissed. It persists in asserting a breach of contract claim related to a network agreement that it asserts does not exist. Of course, a litigant can make pleadings in the alternative, but there must be a good faith basis. How can CHS not know whether it has a network agreement with the health plans at issue? In reality, CHS has no network agreement with the health benefit plans, which explains why it cannot plead, as it must the basic facts related to the contract, *e.g.*, who are the parties, what are the terms, how was it breached. Absent such factual allegations, which are impossible with respect to a non-existent contract, the breach of contract claim should be dismissed for failure to state a claim.

## VII. CHS Did Not Plead Fraud or Negligent Misrepresentation with Particularity

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Rule 9(b) requires the plaintiff to allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Courts unapologetically enforce these more stringent pleading requirements:

> [T]he requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense. Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted. So today we neither set springs for the unwary nor insist on 'technical' pleading requirements. We remind that this bite of Rule 9(b) was part of the pleading revolution of 1938. In short, we apply the rule with force, without apology.

*Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997). The Fifth Circuit applies these same

7

heightened pleading requirements to negligent misrepresentation claims. *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). CHS did not plead these details; instead, it alleged generally that over the course of five years it was defrauded as GPA was consistently making fraudulent statements that it would pay 80-100% of the claims, but then paying much less. It is hard to understand how CHS was consistently defrauded as the statements were allegedly being made while the payments—over the course of five years—were coming in much lower. Perhaps this disconnect alone is enough to explain why fraud must be pled with particularity; however, as the *Williams* case explained the pleading requirement needs no explanation. Moreover, CHS contends it can comply with the heightened pleading requirement. Accordingly, this Court should require it to do so.

**VIII. CHS Did Not Plead Reliance on Alleged Promises**

CHS's promissory estoppel claim is based on the alleged promise that GPA would pay 80-100% of the claims. (Amended Complaint, ¶ 48.) CHS did not plead any reliance on such alleged promise. In its opposition brief, CHS says that it pled reliance in paragraph 38 of the Amended Complaint; however, paragraph 38 falls under the fraud claim and alleges CHS relied on vague, generalized statements about network status—not promises to pay 80-100%. CHS did not plead any reliance on the alleged promises upon which its promissory estoppel claim is based. Accordingly, the Court should dismiss this claim.

For the reasons set forth above, the Court should dismiss GPA from this case.

Respectfully submitted this 12th day of December, 2019.

/s/ William J. Akins

**William J. Akins, Esq.**
Texas Bar No. 24011972
william.akins@fisherbroyles.com
**FISHERBROYLES, LLP**
100 Congress Avenue, Suite 2000
Austin, TX 78701
214.924.9504

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

    The undersigned does certify that on the 12th day of December, 2019, a true and correct copy of the foregoing was served as indicated on the following persons:

| | |
|---|---|
| Carolyn L. Douglas | Charles "Scott" Nichols |
| CLARK HILL STRASBURGER | CLARK HILL STRASBURGER |
| 2301 Broadway Street | 909 Fannin Street, Suite 2300 |
| San Antonio, TX 78215 | Houston, TX 77010 |
| carrie.douglas@clarkhillstrasburger.com | scott.nichols@clarkhillstrasburger.com |

_____
William J. Akins, Esq.