IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **COVENANT HEALTH SYSTEM,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | Civil Action No. |
| § | 5:19-CV-103-H |
| **GROUP & PENSION ADMINISTRATORS,** § | |
| **INC., et al** § | |
| § | |
| *Defendants*. § | |

## Plaintiff Covenant Health System's Opposition to the Plan Defendants' FRCP 12(b)(6) Motion to Dismiss

To the Honorable United States District Court Judge:

Plaintiff Covenant Health System ("Covenant") opposes the FRCP 12(b)(6) Motion to Dismiss (Doc. 25) filed by Defendants Western Dairy Transport, LLC; the Western Dairy Transport, LLC Pre-Tax Premium Plan; Friona Industries, LP; the Friona Industries, LP Employee Benefit Plan; Lori's Gifts, Inc.; the Lori's Gifts Employee Health Plan; Santa Rosa Telephone Cooperative, Inc.; and the Santa Rosa Telephone Cooperative, Inc. Health Care Benefits Plan (collectively, the "Plan Defendants"), and respectfully would show the following:

### I.
### Introduction

The Plan Defendants' motion to dismiss is copied verbatim from the FRCP 12(b)(6) motion to dismiss (Doc. 11) previously filed by Defendant Group & Pension Administrators, Inc. ("GPA"), with only a handful of exceptions. Therefore, for the sake of efficiency, Covenant incorporates by reference its opposition to GPA's motion to dismiss (Doc. 21), which applies with equal force to the Plan Defendants' motion. Covenant will only specifically address the points that differ between the motions to dismiss filed by GPA and the Plan Defendants.

1

As Covenant did in response to GPA's motion to dismiss, it concedes that its breach of contract claim based on its patients' Consents of Admissions can be dismissed because the Plan Defendants are not parties to those agreements. However, the remainder of Covenant's claims against the Plan Defendants are valid and adequately pleaded.

## II.

## Argument & Authorities

### A. ERISA § 502(a)(1)(B)

Unlike GPA, the Plan Defendants do *not* dispute that they are proper defendants to answer for Covenant's claim for plan benefits pursuant to ERISA § 502(a)(1)(B). Their only argument for dismissal of this claim is that the hospital supposedly "admits the benefits were paid as required by the Plan documents," Doc. 25 at p. 14, which, for the reasons previously discussed in Covenant's opposition to GPA's motion to dismiss, simply is not true. *See* Doc. 21 at pp. 6-7.

### B. Unjust Enrichment/*Quantum Meruit*

Just as GPA argued that the First Amended Complaint (the "FAC") fails to state a claim against it for unjust enrichment/*quantum meruit* because Covenant supposedly did not provide the hospital services in question for GPA's benefit, the Plan Defendants argue that the FAC fails to state a claim against them for unjust enrichment/*quantum meruit* because Covenant supposedly did not provide the hospital services in question for their benefit. Covenant's response to GPA's argument applies equally to the Plan Defendants' argument, because GPA was acting as the plans' third-party administrator and agent when it impliedly requested that Covenant render services to plan members and represented to Covenant that the members had full coverage for the services rendered by Covenant under the plans. *See* Doc. 21 at pp. 7-9.

2

Thus, Covenant rendered services under such circumstances that reasonably notified the Plan Defendants that Covenant, in performing the services, expected to be paid by the plans for the services rendered.

The Plan Defendants further argue that "[a]ny contention that GPA benefitted from the services provided to and for the Patients … would … result in the cause of action being conflict preempted by ERISA," because it supposedly would "relate to" an ERISA employee benefit plan. Doc. 25 at pp. 9-10.  It is unclear what this argument has to do with Covenant's unjust enrichment/*quantum meruit* claim against the *Plan Defendants*, as opposed to *GPA*.  In any event, Covenant's claim (whether against GPA or the Plan Defendants) is *not* ERISA-preempted because it implicates Defendants' independent legal obligations not to falsely represent approval of hospital services and not to refuse to pay for approved, valuable services rendered to the plans' members.  Such duties are not derivative of or dependent on the terms of an ERISA plan, because there is no need to consult any of the underlying plan documents to determine the "reasonable value" of Covenant's services.

The crux of Covenant's unjust enrichment/*quantum meruit* claim is that the hospital provided valuable healthcare services to plan members (who pay premiums to the plans in exchange for healthcare coverage) based on GPA's implied requests on behalf of the Plan Defendants that Covenant render the services, with the expectation of being paid for same, and now Defendants refuse to pay a reasonable fee for such services. *See* Doc. 9 at ¶¶ 19 and 26. Covenant would not have agreed to provide healthcare services to plan members had it known that the reimbursement rate would be unreasonably low.

*Transitional Hosp. Corp. v. Blue Cross & Blue Shield, Inc.*, 164 F.3d 952 (5th Cir. 1999) is analogous.  There, a participant in an ERISA plan was an inpatient at a hospital.  Prior to the

3

patient's admission, the hospital contacted Blue Cross concerning the extent of the patient's coverage, just like Covenant alleges it verified coverage with the Plan Defendants' third-party administrator and agent, GPA, prior to rendering healthcare services to the plan members at issue here. Blue Cross informed the hospital that it would be reimbursed 100% after exhaustion of the patient's Medicare benefits. However, when presented with the hospital's bill, Blue Cross claimed that the hospital was only entitled to collect approximately one thousand dollars, a *de minimus* amount compared to the total bill. The hospital sued Blue Cross alleging a variety of state law claims and Blue Cross removed on ERISA preemption grounds. Blue Cross later moved for summary judgment on the ground that the state law claims were preempted. The district court granted the motion and the hospital appealed.

The dispositive issue before the Fifth Circuit was whether ERISA preempted the hospital's state law claims relating to Blue Cross's alleged misrepresentations. The Fifth Circuit reversed the ruling of the district court, expressly holding that "ERISA does not preempt state law when the state law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." *Id.* at 954. The court explained that state law claims are only preempted by ERISA when the claim in question is "dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan," which the hospital's state-law negligent misrepresentation claim was not. *Id.* at 955; *see also Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994) (ERISA does not preempt state law claim of negligent misrepresentation).

As was the case with regard to the hospital's state law negligent misrepresentation claim in *Transitional Hosp.*, Covenant's state law unjust enrichment/*quantum meruit* claim is not

4

dependent on or derived from the underlying plan members' rights to recover benefits under the plans. Covenant's claim is *not* preempted by ERISA.

### C. Violations of ACA-Mandated Cost-Sharing Limits

The Plan Defendants make all the same arguments in favor of dismissal of Covenant's claim based on their violations of the ACA-mandated cost-sharing limits that GPA did, except that they do *not* dispute that they are proper defendants to answer for ACA violations. The Plan Defendants' arguments for dismissal were previously addressed in Covenant's opposition to GPA's motion to dismiss. *See* Doc. 21 at pp. 9-15.

### D. Breach of the Facility Participation Agreements

The Plan Defendants' arguments in favor of dismissal of Covenant's breach of the Facility Participation Agreements are identical to GPA's arguments in its motion to dismiss. Covenant previously responded to those arguments in its opposition to GPA's motion to dismiss. *See* Doc. 21 at pp. 16-17.

### E. Fraud and Negligent Misrepresentation

As to Covenant's fraud and negligent misrepresentation claims, the Plan Defendants make all the same failure to plead with particularly arguments that GPA did in its motion to dismiss. Those arguments were previously addressed by Covenant in its opposition to GPA's motion to dismiss. *See* Doc. 21 at pp. 17-19.

Additionally, the Plan Defendants argue that Covenant's fraud and negligent misrepresentation claims are premised on misrepresentations made by GPA, not the Plan Defendants, and that the hospital does not plead sufficient facts to show that GPA was acting as their agent when it made those misrepresentations. *See* Doc. 25 at pp. 11-12. According to the

Plan Defendants, "the Hospital offers only the conclusory statement, which is entitled to no consideration, that GPA was the agent of Defendants." *Id.* at p. 12.

In fact, Covenant pleaded that "[d]uring all material times, GPA has acted as the plan administrator, claims administrator, or a 'third party administrator' " of the plans at issue. Doc. 9 at ¶ 2. GPA expressly *admits* in its motion to dismiss that it *is* "the third party claims administrator for the patients' health plans" for all 71 of the patients at issue. *See* Doc. 11 at p. 1. And, tellingly, the same lawyer represents GPA and all eight of the Plan Defendants, presumably because of their relationship to each other.

Covenant further alleges that GPA, as the third-party administrator for the health benefit plans at issue, verified benefits with Covenant personnel, pre-authorized certain claims, accepted Covenant's claims, processed claims for payment, repriced claims pursuant to the fee schedule contract rates in the Facility Participation Agreement, corresponded verbally and in writing with Covenant collectors regarding the need for medical records or other information to process Covenant's claims, and issued checks to Covenant for the services rendered, albeit for less than what was rightfully owed. Doc. 9 at ¶ 27. As alleged in the FAC, GPA's misrepresentations to Covenant that form the basis of its fraud and negligent misrepresentation claims occurred after Covenant called GPA to verify plan coverage and/or obtain authorization before performing hospital services to plan members. *See, e.g.,* Doc. 9 at ¶ 19 (alleging that GPA affirmatively misrepresented, in faxed authorizations and over the phone, that it would reimburse Covenant "80-100% following application of the deductible," without qualifying this payment information with a reference to any allowable or allowed amount); ¶ 26 ("Several times throughout the course of each of the Defendants' insureds respective treatments, Covenant called GPA to verify benefits, confirm network status, and seek authorizations for continued care. At all relevant

times, GPA represented to Covenant that its insureds had full coverage for the treatments and services rendered by Covenant."); ¶ 26 ("[A]t no time[] was Covenant advised during the verifications that referenced based pricing governed the members."); and ¶ 44 ("At no point during the verification process did [GPA] explain to Covenant that the healthcare plans purported to have a limitation or exclusion on benefits whereby the healthcare plans would not pay more than 112% of Medicare for all of Covenant'[s] services.").

The *whole point* of a third-party administrator, like GPA, is to perform administrative tasks on behalf of the health benefit plans with which it contracts, including verifying plan coverage and pre-authorizing services. If the Plan Defendants truly believe that GPA lacked authority to communicate with Covenant regarding such matters, they can raise that argument in a motion for summary judgment. However, Covenant *plainly* has pleaded sufficient facts to allege a claim upon which relief can be granted against the Plan Defendants, based on GPA's misrepresentations to Covenant while acting as their third-party administrator and agent.

### F. Promissory Estoppel

The Plan Defendants' argument that Covenant failed to adequately plead the reliance element of its promissory estoppel claim is identical to the argument raised by GPA in its motion to dismiss. Covenant previously addressed this argument in its opposition to GPA's motion to dismiss. *See* Doc. 21 at pp. 19-21.

WHEREFORE, Covenant prays that the Court deny the Plan Defendants' FRCP 12(b)(6) motion to dismiss, and grant it all such other and further relief to which it is justly entitled.

Respectfully submitted,

**CLARK HILL STRASBURGER**

/s/ Carolyn L. Douglas
**CAROLYN L. DOUGLAS**
State Bar No. 24045800
carrie.douglas@clarkhillstrasburger.com
2301 Broadway Street
San Antonio, Texas 78215
(210) 250-6000
(210) 250-6100 Fax

**CHARLES "SCOTT" NICHOLS**
Texas Bar No. 14994100
snichols@clarkhill.com
**ZACHARY W. THOMAS**
Texas Bar No. 24070739
zthomas@clarkhill.com
909 Fannin Street, Suite 2300
Houston, Texas 77010-4035
(713) 951-5600
(713) 951-5660 Fax

**ATTORNEYS FOR PLAINTIFF
COVENANT HEALTH SYSTEM**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of December, 2019, a true and correct copy of the foregoing *Opposition to the Plan Defendants' FRCP 12(b)(6) Motion to Dismiss* was served on all known counsel of record via the CM/ECF system.

William J. Akins, Esq.
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701

/s/ Carolyn L. Douglas
Carolyn L. Douglas

Legal\B5471\A59963\4820-7143-0319.v1-12/18/19