UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

COVENANT HEALTH SYSTEM,

     Plaintiff,

v.                                                                No. 5:19-CV-103-H

GROUP & PENSION
ADMINISTRATORS, INC., et al.,

     Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

This lawsuit involves a business dispute in which a hospital system alleges that it was not properly reimbursed for insurance claims. *See* Dkt. No. 9 at 6. Before the Court are two motions to dismiss for failure to state a claim—one filed by Group & Pension Administrators (GPA) and one filed by the employee benefit plan defendants. Dkt. Nos. 11, 25, 32.[1] The Court grants in part and denies in part each motion. Because the Court agrees with the defendants that Covenant is not a proper plaintiff for breach-of-contract and quantum meruit claims against GPA and the plan defendants, the Court dismisses those claims. Further, the Court dismisses Covenant's cost-sharing claims against GPA under the Affordable Care Act because GPA does not qualify as a "group health plan" as defined by the statute, and, in any event, Covenant lacks standing to enforce statutory penalties against the defendants for improper plan design. But because Covenant has adequately pled its negligent-misrepresentation, promissory-estoppel, and ERISA-benefits claims against GPA and the plan defendants, the Court denies the motions to dismiss as to those claims.

---

[1] Two plan defendants filed a separate motion to dismiss, Dkt. No. 32, which is substantially identical to the remaining plan defendants' earlier motion. Dkt. No. 25.

1.     **Factual Background**

Covenant Health System is a non-profit Texas corporation doing business as a

hospital in Lubbock County, Texas, while GPA is a Texas corporation that acts as the

claims administrator or third-party administrator for group health plans that offer health

care benefits to their members.  Dkt. No. 11 at 2.  The hospital system sued GPA and

twelve additional defendants, which are the group health plans and the companies that

sponsor those plans.  *See* Dkt. No. 9.  The Court has federal question jurisdiction over the

claims in this case under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1001, *et seq.* (the Employment

Retirement Income Security Act, or ERISA).

The hospital alleges that, between 2014 and 2019, it rendered care to a set of patients

with insurance plans that did not have any "network of hospital providers capable of

providing the emergency and inpatient services that the healthcare plans at issue purportedly

covered."  *Id.* at 7.  The patients' insurance cards did not provide any guidance as to what

the no-network level of reimbursement would be.  *Id.*  Per Covenant, "when CHS

endeavored to verify benefits for these claims, it typically received a facsimile wherein GPA

would advise that CHS would receive between 80-100% following application of the

deductible."  *Id.*  Covenant required some or all of these patients to sign Consents of

Admission, by which the patients "agreed to pay for the hospital charges to the extent that

insurance did not cover the same."  *Id.* at 12.  The Consents of Admission are alleged to

assign all benefits under the patients' employee welfare benefit plans to Covenant.

Covenant allegedly rendered goods and services to certain patients pursuant to a

"Facility Participation Agreement with PHCS and/or HealthSmart."  *Id.* at 11.   PCHS and

HealthSmart appear to be different third-party administrators of employee welfare-benefit plans.

Further, Covenant alleges that GPA adopted a "reference[-]based pricing model" through which it paid Covenant 112% of Medicare for services rendered. *Id.* at 7. Simultaneously, Covenant asserts that GPA's communications with Covenant represented that the patients at issue were part of a PPO network. According to Covenant, "GPA put no effort into setting specific reference prices for individual procedures at any level that any hospital in the geographic area was willing to accept. The 112% of Medicare paid by GPA for every conceivable medical service rendered represents an inadequate level of payment that no hospital in the greater Lubbock area would accept as payments." *Id.* at 8.

As to the employee benefit plans, Covenant alleges that they "deliberately adopted a self-funded plan structure that included NO network of hospital or facility providers who could provide emergency or inpatient hospital care. Thus, these Defendants left their respective members with no adequate options for obtaining these covered medical services from network providers." *Id.* at 9–10. As a result, patients were allegedly left responsible for substantial balances, which they could not afford to pay. *Id.* at 10.

## 2.    Standards of Review

When reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)) (internal citations and quotations omitted).  A motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

When a plaintiff's complaint fails to state a claim, a court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice.  *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co.*, 313 F.3d at 329; *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted).  However, a plaintiff should be denied leave to amend a complaint if "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990).

3.    **Analysis**

    A.    **Covenant's breach-of-contract claims must be dismissed because Covenant has not pled that it is a party to a contract with any of the defendants.**

        i.    **Breach-of-contract claim against GPA**

To "prevail on a breach of contract claim under Texas law, a plaintiff must establish the existence of a contract, the performance or tender of performance by the plaintiff, a breach by the defendant and damages as a result of that breach." *Mem'l Hermann Health Sys. v. Coastal Drilling Co., LLC Employee Ben. Tr.*, 12 F. Supp. 3d 1001, 1013 (S.D. Tex. 2014) (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003)).

Covenant originally based its breach-of-contract claim against GPA in part on Consent of Admission forms that patients allegedly signed before Covenant provided them with medical care, but the hospital now agrees that this portion of its claim may be dismissed. Dkt. No. 21 at 1. The Court agrees and dismisses this claim with prejudice.

The remaining disputed breach-of-contract claim against GPA relates to Facility Participation Agreements. *See id.* at 3. Per Covenant, it rendered hospital goods and services to certain patients pursuant to Facility Participation Agreements with either PCHS or HealthSmart, which appear to be different third-party administrators. Dkt. No. 9 at 11–13. Covenant asserts that, by giving patients insurance cards indicating that GPA was part of the PCHS or HealthSmart networks, GPA represented the "existence of a valid and enforceable contract between Covenant and PHCS and/or HealthSmart Network, and a corresponding valid and enforceable contract between PHCS and/or HealthSmart Network and GPA." Dkt. No. 21 at 16. In response, GPA argues that the lack of a network agreement between Covenant and the health benefit plans prevents Covenant from pleading

"the basic facts related to the contract, e.g., who are the parties, what are the terms, how was it breached." Dkt. No. 27 at 7.

The Court agrees with GPA that Covenant has not pled the basic facts related to the alleged contract. Because the Court's review of the filings indicates that Covenant would not be able to cure the deficiencies in its breach-of-contract claim against GPA, the Court dismisses that claim with prejudice. Covenant cannot recover for breach of contract against a defendant who was not a party to the agreement. *See Boren v. N.L. Indus., Inc.*, 889 F.2d 1463, 1465 (5th Cir. 1989) (affirming a district court's grant of summary judgment to a defendant on a breach-of-contract claim where the defendant was not a party to the agreement at issue).

Other courts have reached a similar conclusion under similar circumstances. In *Mem'l Hermann Health Sys.*, for example, a court granted summary judgment to the defendant, an employee benefit plan, on the healthcare providers' breach-of-contract claim. 12 F. Supp. 3d at 1015–16. The court found that (1) the "Network Access Agreement" in that case did not obligate the employee benefit plan to pay the healthcare provider the rates for which it contracted with the plan administrator; and (2) the agreement expressly disclaimed third-party rights. *Id*. Although the procedural posture of that opinion differed from the one here, Memorial Herrman pled that the employee benefit plan was a party to Memorial Herrman's agreement with HealthSmart/PPOplus, which accounts for the district court's decision to deny the plan's motion to dismiss the breach-of-contract claim and resolve the issue on summary judgment instead. *See Mem'l Hermann Health Sys.*, No. 4:13-cv-01280, Dkt. No. 3 at 3–4 (S.D. Tex. May 9, 2013).

Here, Covenant has not pled that GPA is a party to the relevant contracts, so dismissal of Covenant's breach-of-contract claims at this stage is appropriate.  Covenant has failed to adequately plead that it is a party to the Facility Participation Agreements or explain how it allegedly acquired third-party rights to enforce them.  Even if, unlike in *Mem'l Hermann Health Sys.*, the Facility Participation Agreements did not expressly disclaim third-party rights, the hospital still cannot enforce a contract to which it is not a party and over which it has not acquired third-party rights.  *See Cottingham v. Gen. Motors Corp.*, 119 F.3d 373, 378 (5th Cir. 1997).  Moreover, Covenant does not adequately allege the existence of additional agreements that would combine to "constitute a single, unified contract" to which Covenant would be a party.  *Cf. Baylor University Medical Center v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 755 (N.D. Tex. 2004) (finding such a unified contract because the contractual "instruments expressly refer[red] to one another, showing an intertwined relationship between the parties and the instruments at issue"); *GPA Holding, Inc. v. Baylor Health Care Sys.*, 344 S.W.3d 467, 474 (Tex. App.—Dallas 2011, pet. denied) (reaching the same conclusion).  Thus, the breach-of-contract claim against GPA must be dismissed.

### ii.    Breach-of-contract claims against the plan defendants

Covenant's breach-of-contract claims against the plan defendants are subject to dismissal for the same reasons as the contract claim against GPA.  Like GPA, the plan defendants are not alleged to be parties to any Facility Participation Agreement between Covenant and PCHS or HealthSmart.  To the extent that it relies on the Facility Participation Agreements, Covenant also fails to sufficiently plead facts related to the terms of the contract.

### iii.   Dismissal of the breach-of-contract claims is with prejudice to refiling.

Despite the liberal standard for granting leave to amend, the Court dismisses Covenant's breach-of-contract claims with prejudice.  Covenant does not plead—or argue in its responses to the defendants' motions to dismiss—that GPA or the plan defendants are parties to the Facility Participation Agreements or explain how it might have acquired third-party rights to enforce those agreements.  Given the above analysis, the Court concludes that amendment of the complaint would be futile as to the breach-of-contract claims and dismisses those claims with prejudice.

### B.   The Court dismisses Covenant's quantum meruit claims because Covenant rendered services to and for patients—not GPA and the plan defendants.

Covenant must satisfy four elements to demonstrate entitlement to relief under quantum meruit: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) that person accepted, used, and enjoyed the services or materials; (4) under circumstances that reasonably notified the person sought to be charged that the plaintiff expected to be paid by that person.  *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).  In contrast, a party "may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Although Covenant occasionally uses "quantum meruit" and "unjust enrichment" interchangeably in its briefing, the hospital makes clear that its claim focuses on the elements of quantum meruit.  *See* Dkt. No. 21 at 7 ("Thus, properly framed, the issue is whether Covenant rendered services under such circumstances that reasonably notified

8

GPA that Covenant, in performing the services, expected to be paid by GPA for the services rendered."). As such, the Court analyzes the claims under quantum meruit standards.

### i.    Quantum meruit claim against GPA

Covenant pleads a quantum meruit claim against GPA in the alternative to its breach-of-contract claim. In its motion to dismiss, GPA argues that Covenant's quantum meruit claim fails because Covenant cannot show "that the services were provided 'for the person sought to be charged.'" Dkt. No. 11 at 8. Covenant counters that "the issue is whether Covenant rendered services under such circumstances that reasonably notified GPA that Covenant, in performing the services, expected to be paid by GPA for the services rendered." Dkt. No. 21 at 7. In arguing that its quantum meruit claim satisfies the second element of the standard, Covenant asserts that the benefit of Covenant's services to GPA was more than "merely incidental." *Id.* at 11.

While Covenant's arguments may support its fraud, negligent-misrepresentation, and promissory-estoppel claims, the quantum-meruit claim against GPA fails at the second step of the applicable analysis because, even if Covenant were to prove the facts underlying the claim, the pleadings make clear that Covenant rendered services to and for the benefit of patients, not GPA. "Courts have refused to recognize an unjust enrichment or quantum meruit cause of action based on healthcare services provided to a participant or beneficiary of a healthcare insurance policy or plan." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *aff'd in relevant part*, 614 F. App'x 731 (5th Cir. 2015); *see also Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Encompass's services were rendered to and for its patients, not United."); *Joseph M. Still Burn Ctrs., Inc. v. AmFed Nat'l Ins. Co.*, 702 F. Supp. 2d 1371, 1377

(S.D. Ga. 2010). While GPA is a third-party administrator rather than an insurer, Covenant's pleadings do not allege or explain how the hospital rendered medical services directly for GPA's benefit. Finding the applicable authority to be persuasive, the Court dismisses Covenant's quantum-meruit claims against GPA.

The Court's conclusion is further supported by *Bashara v. Baptist Memorial Hosp. Sys.*, 685 S.W.2d 307 (Tex. 1985). In *Bashara*, an attorney who helped a personal-injury plaintiff secure a settlement with his insurance company sought to recover in quantum meruit against a hospital, which ultimately secured a portion of the plaintiff's settlement with the insurance company by enforcing a hospital lien against the plaintiff. *Id.* at 308–09. The Texas Supreme Court held that the attorney could not recover in quantum meruit because, although the attorney's efforts benefited the hospital, he acted for his own benefit and the benefits that accrued to the hospital were incidental to his own benefits. *Id.* at 310.

Here, Covenant's decision to render care to patients directly benefited those patients and profited GPA only in a secondary manner. To the extent that Covenant can state a quantum meruit claim on the facts it has alleged, that claim is cognizable against the patients rather than against GPA. In its briefing, Covenant does not suggest any way in which it could amend its pleadings to cure the deficiency that the defendants and the Court have identified. Accordingly, the Court finds that any amendment to Covenant's quantum meruit claim against GPA would be futile, and the Court denies Covenant leave to amend its complaint as to this claim.

### ii.    Quantum meruit claims against the plan defendants

Covenant's quantum meruit claims against the plan defendants cannot proceed for the same reasons that the hospital's identical claim against GPA fails. The hospital system

10

allegedly rendered healthcare services to patients, thereby benefiting those patients.  While the plan defendants may have benefited from such services in the sense that Covenant's services to the patients discharged certain obligations that the plan defendants may have had to those patients, the link between the healthcare services provided to patients and the benefits realized by the plan defendants is too attenuated for Covenant to prove that it rendered services "for the person sought to be charged."  *Vortt Exploration Co.*, 787 S.W.2d at 944.

Thus, on these pleadings and allegations, the Court cannot imagine any amendment to the complaint that would overcome the core deficiency the Court has identified in Covenant's quantum-meruit claims against the plan defendants.  Covenant's services benefited the patients directly, and the plan defendants were only indirect beneficiaries. Thus, the Court denies Covenant leave to amend its complaint with respect to the quantum meruit claims against the plan defendants.

### C.    The Court dismisses Covenant's ACA cost-sharing claims against GPA and the plan defendants.

The Affordable Care Act regulates the provision of health insurance in several ways, including through restrictions on the design of health insurance plans.[2]  In 2010, the ACA added Section 2707 to the Public Health Service Act, which is codified at 42 U.S.C. § 300gg-6.  ERISA makes Section 2707 of the PHS Act applicable to ERISA plans.  *See* 29 U.S.C. § 1185d.  Section 2707 "limits the maximum out-of-pocket ('MOOP') expenses that

---

[2] The Court recognizes that the future of the ACA is uncertain.  A district court concluded that the ACA's individual mandate was unconstitutional and inseverable from any other part of the ACA, but it stayed the judgment pending appeal.  *See Texas v. United States*, 945 F.3d 355, 373 (5th Cir. 2019), *cert. granted sub nom. Texas v. California*, No. 19-1019, 2020 WL 981805 (U.S. Mar. 2, 2020), *and cert. granted sub nom. California v. Texas*, No. 19-840, 2020 WL 981804 (U.S. Mar. 2, 2020).  On appeal, the Fifth Circuit held that the individual mandate was unconstitutional, but the court

a health plan can impose on a patient in a plan year." Dkt. No. 21 at 9. The statute provides that a "group health plan shall ensure that any annual cost-sharing imposed under the plan does not exceed the limitations provided for under [42 U.S.C. § 18022(c)(1)]." 42 U.S.C. § 300gg-6(b).

Covenant pleads that it may enforce the ACA cost-sharing limitations against the defendants because it "is the assignee of all benefits under the healthcare plans for each of the claims at issue" pursuant to Consent of Admission forms signed by each applicable patient. Dkt. No. 9 at 17. The hospital alleges that "GPA essentially ignored the ACA's cost-sharing limitations by paying only a small portion of Covenant's bills (i.e., 112% of Medicare) and by failing to count the hospital's charges towards each patient's MOOP threshold, thus leaving plan members to pay the considerable balance of the charges." Dkt. No. 21 at 10. In response, the defendants make three distinct arguments for why the ACA cost-sharing claims should be dismissed, which the Court addresses in turn.

> i.   **As the Court agrees with GPA that GPA is not a proper defendant because it is not a "group health plan," the Court dismisses Covenant's ACA cost-sharing claim against GPA.**

GPA argues that a "third party administrator is not the proper defendant for a claim of improper plan design or violation of the annual cost-sharing limit." Dkt. No. 11 at 18 (citing *Salinas Valley Mem. Healthcare Sys. v. Envirotech Molded Prods.*, No. 17-cv-03887, 2018 U.S. Dist. LEXIS 85256, at *25–27 (N.D. Cal. Nov. 8, 2017)). Per GPA, because it is not a

---

remanded the case to the district court for a revised severability analysis. 945 F.3d at 369. The Supreme Court has since granted a writ of certiorari and will resolve the issues. But resolution of those issues is not in play here because the parties do not dispute the relevant ACA provisions' constitutionality, and, in any event, the outcome would not change even if they did. Thus, the Court will assume the ACA's viability solely for the sake of the motions to dismiss.

group health plan, "it cannot be liable for any Plan's alleged violation of the cost-sharing limitation."  Dkt. No. 11 at 9.

Covenant responds that GPA overreads *Envirotech*, which did not distinguish between the plan and the plan administrator.  Dkt. No. 21 at 14.  However, Covenant's arguments for applying the ACA's MOOP limitations to GPA are based in legislative purpose rather than the text of the applicable statute.  Covenant argues:

> [J]ust as a third party administrator is liable for ERISA plan benefits under ERISA Section 502(a)(1)(B) when it exercises control over the benefits claims process, so too should it be liable under the ACA when, as here, it deliberately adopts a self-funded plan structure that includes no network of hospitals capable of providing hospital care and emergency services to plan members, chooses to implement a completely inadequate reference price that no hospital in Covenant's geographic area is willing to accept, and processes claims in a way that does not count hospital charges towards members' annual MOOP limits.

Dkt. No. 21 at 14.  Covenant's analogy to ERISA Section 502(a)(1)(B) and a third-party administrator's control over the benefits claims process is understandable.  If a third-party administrator can be liable for ERISA plan benefits, logic seems to dictate that the administrator should also be liable under the ACA if it engages in the reference-price scheme that Covenant has alleged.

But analogies do not control the Court's interpretation of statutory text.  The text does.  In fact, courts must "follow the text even if doing so will supposedly undercut a basic objective of the statute."  *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) (citation and internal quotation marks omitted).  And here, the application of textual-interpretation principles requires the Court to find that GPA is not a proper defendant for a claim under Section 300gg-6.

13

The text of Section 300gg-6 refers to the obligations of a "group health plan." Elsewhere within the same statute, ERISA defines a group health plan as "an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1167(1).  As a third-party administrator does not provide medical care directly or indirectly to participants or beneficiaries, it cannot be a group health plan within the meaning of ERISA.  *Cf. N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 468 (5th Cir. 2018) (explaining that a third-party administrator bears no risk because it does not provide medical insurance but rather is responsible only for "processing and adjudicating claims and recovering overpayments"); *NGS Am., Inc. v. Barnes*, 998 F.2d 296, 299–300 (5th Cir. 1993) (describing the same concept).

Additionally, the defendants' reading of Section 300gg-6 is consistent with the definition of "group health plan" that is advanced in similar statutes.  "[L]aws dealing with the same subject—being *in pari materia* (translated as 'in a like manner')—should if possible be interpreted harmoniously."  Antonin Scalia & Bryan A. Garner, *Reading Law* 252 (2012). Per the Medicare Secondary Payer Act, a group health plan is "a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families."  26 U.S.C. § 5000  By stating that a "group health plan" must be "of, or contributed to by, an employer," the Medicare Secondary Payer Act excludes third-party administrators, which are neither part of employers nor contributed to by them, from the definition of a group health plan.  ERISA and the

Medicare Secondary Payer Act are related statutes that both regulate the mechanisms for provision of health insurance to individuals, and the two statutes should be interpreted in a consistent manner.

Given the statute's plain language and the above analysis, the Court concludes that Section 300gg-6 does not apply to third-party administrators.  The Court, finding that GPA is not a proper defendant because it is not a group health plan and that no amended complaint could cure this deficiency, dismisses Covenant's ACA cost-sharing claim against GPA with prejudice.

> ii.     **The hospital is not a proper plaintiff because its assignment does not cover claims related to plan design.**

GPA argues that Covenant lacks standing because its assignment is not sufficiently broad, asserting that "[w]hile the Fifth Circuit recognizes [that] health care providers may have standing to pursue a patient's ERISA claim for benefits pursuant to an assignment, *see Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003), it has not extended derivative standing to other ERISA claims, such as claims for statutory penalties."  Dkt. No. 11 at 19.

Covenant disagrees, characterizing the ACA cost-sharing requirements as "just one more ERISA benefit provided by the underlying plans."  Dkt. No. 21 at 15.  In addition, Covenant cites to *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 5:17-CV-07076-HRL, 2018 WL 2445349 (N.D. Cal. May 31, 2018), where it claims that "the court denied the defendant's motion to dismiss the hospital's ACA claim, necessarily finding that the hospital had standing to bring its ACA claim, via ERISA, presumably pursuant to its assignment 'of all benefits under the Plan for each of the claims in this case.'"  Dkt. No. 21 at 15 (citing 2018 WL 2445349 at *3, 10) (emphasis removed).

Finding that the assignment of "all benefits under the healthcare plans" is not sufficiently broad to confer standing to allow Covenant to enforce Section 300gg-6, the Court dismisses Covenant's Section 300gg-6 claims.  Covenant overreads *Monterey*, which does not discuss whether the ACA's cost-sharing limitations qualify as "benefits."  "Words are to be understood in their ordinary, everyday meanings—unless the context indicate that they bear a technical sense."  Scalia & Garner, *supra*, at 69.  Here, the ordinary meaning of "benefits" in the context of a health-insurance plan does not include the right to enforce statutory penalties for improper plan design.  *Cf.* 29 U.S.C. § 1002(1) (defining an "employee welfare benefit plan" governed by ERISA as a plan that provides "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services").

Additionally, the Court finds the logic of *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 860 (S.D. Tex. 2016), to be instructive. There, a medical provider sought to enforce plan participants' and beneficiaries' rights under ERISA, including the rights to request information and seek statutory penalties for the failure to provide such information, against a health-insurance company.  The district court, interpreting the Fifth Circuit's decision in *Tango*, found that plan participants and beneficiaries could not assign a statutory right under ERISA or the remedy for a violation of that right.  *Id.*

Here, the ACA's cost-sharing requirements and the remedies for the violation of those requirements are likewise statutory creations.  As with the ERISA provision at issue in *Elite Ctr. for Minimally Invasive Surgery*, nothing in Section 300gg-6 authorizes the assignment

16

of claims for the violation of ACA's cost-sharing requirements.  Thus, the defendants here correctly state that a Section 300gg-6 claim is a claim "for alleged improper plan design and failure to comply with a separate ERISA requirement" that cannot be assigned—rather than an assignable claim for benefits.  Dkt. No. 25 at 20.  Because no amended complaint could cure the insufficiency of Covenant's assignment, which is the core of this claim, the Court grants the defendants' motions to dismiss Covenant's ACA cost-sharing claims with prejudice.

### iii.   The Court declines to resolve the parties' arguments regarding balance billing for non-network providers.

In Sections 3.C.i–ii of this order, the Court has identified two independent bases for dismissing Covenant's ACA cost-sharing claim against GPA and one basis—the insufficiency of Covenant's assignment—for dismissing the hospital's cost-sharing claims against the plan defendants.  Accordingly, the Court declines to reach GPA's additional argument that the hospital's "reference price" theory of liability for the defendants' allegedly willful failure to properly reimburse certain claims is not cognizable under 42 U.S.C. § 18022(c)(3)(B).[3]

### D.   The Court, finding that Covenant has adequately pled the defendants' allegedly fraudulent or misleading conduct, denies the defendants' motions to dismiss Covenant's fraud and negligent-misrepresentation claims.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Specifically, "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).  Rule 9(b)'s pleading requirement also

---

[3] *But cf. Salinas Valley Mem'l Healthcare Sys.*, 2018 WL 2445349, at *12–16 (rejecting a motion to dismiss a highly similar claim).

applies to negligent-misrepresentation claims.  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

GPA argues that Covenant's allegation that "GPA made numerous assurances and representations concerning the network status of the GPA patients and payment status" falls "well short of providing the particulars of the time, place, and contents."  Dkt. No. 11 at 10.  Covenant counters that its First Amended Complaint sufficiently placed GPA on notice of the particulars of the fraud and negligent-misrepresentation allegations because Covenant included, in an attachment to the First Amended Complaint, a spreadsheet containing each "patient's account number, the patient's initials, the full billed charges, the total paid by GPA, and the balance due."  Dkt. No. 21 at 19.  Further, Covenant states that it can ameliorate any deficiencies in the pleading of its fraud and negligent-misrepresentation claims by attaching fax authorizations and call summaries reflecting communications between GPA and Covenant.  *See id*. at 17–18.

The Court concludes that Covenant need not attach fax authorizations or call summaries to defeat the motions to dismiss its fraud and negligent-misrepresentation claims. Covenant alleges that the defendants, through their employees and agents, repeatedly misled Covenant by telling Covenant's agents that the hospital "should expect to [be] reimbursed 80-100% of its charges," even when the defendants knew that such representations were inconsistent with their policy of paying no more than 112% of Medicare reimbursement levels.  *See* Dkt. No. 9 at 16.  Viewing the alleged facts in the light most favorable to Covenant, the Court finds that Covenant has supplied the defendants with sufficient notice of "the who, what, when, and where" of the alleged misrepresentations to access the discovery process.  *Williams*, 112 F.3d at 178; *see also Lefcourt v. Health Enrollment*

18

*Grp., Inc.*, No. 3:17-CV-2617-G, 2019 WL 4201564, at *3 (N.D. Tex. Sept. 5, 2019) (finding a plaintiff's allegations of being misled by an unnamed representative of an insurance brokerage firm to be sufficiently detailed and therefore denying the brokerage firm's motion to dismiss).

Further, the Court finds another district court's decision to deny a motion to dismiss causes of action for fraud and negligent misrepresentation in a similar case to be persuasive. *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. CIV.A. 11-806, 2014 WL 4930443, at *7 (E.D. La. Sept. 30, 2014). There, healthcare providers sued insurance companies for fraud and negligent misrepresentation, alleging that "'Defendants' employees' made representations during the pre-verification process as to the allowable amount covered under the plans." *Id.* The district court denied the motion to dismiss the claims for fraud and negligent misrepresentation, finding that "in this case Plaintiffs adequately pleaded the statements alleged to be fraudulent, who made the statements (Defendants' employees), why the statements were made, and why they were fraudulent." *Id.*

Here, Covenant has pled that, for the purpose of inducing Covenant to treat a specific set of patients, the defendants' agents stated that Covenant would be reimbursed for 80-100% of its billed charges despite knowing that Covenant would actually be reimbursed at the lower rate of 112% of Medicare. Thus, Covenant has adequately alleged the who, what, when, and where of its fraud and negligent-misrepresentation claims, and the defendants' motions to dismiss are denied as to those claims.

**E.      Covenant's promissory-estoppel claims are not subject to dismissal because Covenant has adequately pled foreseeable reliance on a promise.**

The elements of promissory estoppel are "(1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Covenant brings claims against GPA and the plan defendants for promissory estoppel, asserting that Covenant relied on the defendants' alleged promises to pay 80 to 100% of Covenant's billed charges for the patients in question.

GPA and the plan defendants argue that Covenant's promissory-estoppel claim is deficient because "GPA did not state what it would pay 80-100% of—the total bill? the allowable claim limit? some other amount? The statement is not an actual promise and has no actual meaning." Dkt. No. 11 at 15.  In response, Covenant clarifies that it alleges GPA promised to pay "80-100%" after the application of each patient's deductible, and Covenant states that the reasonableness of its interpretation is "a fact question for the jury, not an issue to be decided at the motion to dismiss stage."  Dkt. No. 21 at 20.

The Court agrees.  Having alleged that the defendants' promises induced foreseeable reliance, the hospital need not establish the reasonableness of its alleged reliance at the current procedural stage.  *See Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 781–82 (S.D. Tex. 2014).  The hospital has adequately pled the three elements of promissory estoppel—a promise, foreseeable reliance, and actual reliance—and the defendants' "arguments regarding the invalidity of [Covenant's] claim[s] are better addressed on a motion for summary judgment."  *Id*. at 782.  Thus, the Court denies the motion to dismiss the promissory-estoppel claims.

**F.    The Court denies the motion to dismiss Covenant's claim for ERISA benefits because case law indicates that a third-party administrator is a proper defendant for an ERISA-benefits claim.**

A participant, beneficiary, or assignee may bring an ERISA claim "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Covenant brings claims for plan benefits pursuant to ERISA Section 502(a)(1)(B), or 29 U.S.C. § 1132(a)(1)(B), against GPA and the plan defendants. The Court finds that Covenant has adequately stated claims for ERISA benefits and denies the motions to dismiss.

**i.    The Court denies GPA's motion to dismiss Covenant's ERISA-benefits claim.**

According to GPA, "a third[-]party administrator of a benefits plan is not a proper defendant to a claim for benefits under ERISA." Dkt. No. 11 at 12 (citing *Griffith v. Kroger Co.*, No. 9:05-cv-76, 2008 U.S. Dist. LEXIS 34227, at \*19–20 (E.D. Tex. April 25, 2008)). GPA further argues that Covenant has failed to plausibly allege entitlement to additional benefits under plan terms. *See* Dkt. No. 11 at 13. Covenant counters that its First Amended Complaint alleges that GPA abused its discretion in administering the plans by disregarding the "Allowable Claim Limits" under the plans and adopting a blanket policy of reimbursing all services at 112% of Medicare reimbursement levels. *See* Dkt. No. 21 at 5–6. Further, Covenant claims that the Fifth Circuit has "expressly held that third party administrators, like GPA, may be held liable for plan benefits where, as here, they exercise

'actual control' over the benefits claims process." *Id.* at 4 (citing *LifeCare Mgmt. Services LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013)).

Accepting all facts alleged in the complaint as true and viewing those facts in the light most favorable to Covenant, the Court finds that the hospital's claim for ERISA benefits against GPA exceeds the Rule 12(b)(6) threshold.  Covenant has adequately alleged that, by relying "entirely upon the 'Claims Review and Audit Program' provisions that were allegedly embedded in the summary plan description" of the applicable employee benefit plans, GPA exercised "actual control" over the benefits-claims process.  Dkt. No. 9 at 18.  *LifeCare Mgmt. Services* is binding on this Court, and the defendants have not adequately distinguished that case on the facts presented here.  Accordingly, GPA's motion to dismiss Covenant's ERISA-benefits claim is denied.

### ii.   The Court denies the plan defendants' motion to dismiss Covenant's ERISA-benefits claims against them.

As Covenant points out, the plan defendants do not dispute that they are proper defendants under ERISA Section 502(a)(1)(B).  *See* Dkt. No. 28 at 2.  Instead, the plan defendants argue that Covenant "cannot prevail on an ERISA claim for benefits when it admits the benefits were paid as required by the Plan documents."  Dkt. No. 25 at 14.  As discussed above, the Court agrees with Covenant that the hospital has adequately pled entitlement to ERISA benefits by alleging that the defendants' policy of disregarding the "Allowable Claim Limits" under the plans and reimbursing all services at 112% of Medicare reimbursement levels.  As such, the plan defendants' motion to dismiss Covenant's ERISA-benefits claims against them is denied.

4.      **Conclusion**

The Court, finding that Covenant is not a proper plaintiff for breach-of-contract and quantum meruit claims against GPA and the plan defendants, dismisses those claims with prejudice.  Further, as GPA is not a group health plan and Covenant's assignment is not sufficiently broad to cover claims related to plan design, the Court dismisses Covenant's ACA cost-sharing claims against GPA and the plan defendants with prejudice.  However, the Court concludes that Covenant has adequately pled its fraud, negligent-misrepresentation, promissory-estoppel, and ERISA-benefits claims against both GPA and the plan defendants, so the Court denies the defendants' motions to dismiss as to those claims.

So ordered on April 29, 2020.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE